**STATE of Utah, Plaintiff and Appellee,**

v.

**Terry Wayne PERDUE, Defendant and Appellant.**

**No. 900081–CA.**

Court of Appeals of Utah.

June 7, 1991.

Andrew A. Valdez, Charles F. Loyd, Jr., Ronald S. Fujino (argued), Salt Lake Legal Defender Ass'n, Salt Lake City, for defendant and appellant.

R. Paul Van Dam, State Atty. Gen., Dan R. Larsen, Asst. Atty. Gen. (argued), Salt Lake City, for plaintiff and appellee.

Before GARFF, JACKSON and ORME, JJ.

## OPINION

GARFF, Judge:

Terry Wayne Perdue appeals his conviction of murder in the second degree, a first degree felony, in violation of Utah Code Ann. § 76–5–203 (Supp.1989), arguing that his own jury instructions, submitted by the defense, violated his due process rights and that the evidence was insufficient to support the verdict. We affirm.

## FACTS

We recite the facts from the record in the light most favorable to the jury verdict, *State v. Johnson,* 774 P.2d 1141, 1147 (Utah 1989); *State v. Pedersen,* 802 P.2d 1328, 1330 (Utah App.1990). In the late afternoon of October 18, 1988, defendant received a telephone call from his friend, Jerry Kadell Hermansen, the victim.

The victim asked defendant to pick him up at a bar in Sandy and to give him a ride. The victim had given defendant cocaine for rides in the past.

When defendant arrived, the victim told him he had to retrieve a pillowcase from a nearby building. After retrieving the pillowcase, he showed defendant its contents: a revolver, a buck knife, and some ammunition. The victim suggested that they use the gun for target practice. He also suggested they share some of his cocaine. The two decided to go to an area near the city dump to fire the gun.

En route, the two men started to argue about a supposed drug debt defendant owed the victim. Upon arriving at the dump, the two began snorting cocaine. Defendant snorted two lines and the victim snorted six. The victim wanted defendant to obtain more cocaine and defendant refused. After firing some shots, they began arguing again. This time, the victim demanded that defendant pay the debt. The victim took the keys out of the ignition, telling defendant he would keep the car as payment of the debt or until the debt was repaid.

During this argument, defendant watched as the victim reloaded the gun with three bullets. Defendant demanded that the victim give him his keys and the victim refused. Considering himself in danger, defendant hit the victim with his fist and took the gun.

During the struggle, defendant fired three shots. Each shot was fired more than fourteen inches away from the victim. The fatal shot was fired into the right side of the neck, slightly downward, and exited the lower left side of the neck through the spinal cord. Another shot entered from the back left side of the chest, exited the left front side of the chest and entered the victim's elbow. Yet another shot entered the back of the left hip proceeding straight from the rear.

Defendant had had no prior violent incidents with the victim. The victim never pointed the gun at defendant, never said he was going to shoot defendant, and never

threatened defendant with violence. After the shooting, defendant never checked to see whether the victim was alive or dead, nor did he summon help.

After the shooting, defendant threw the gun on the seat of the car, retrieved his keys from the victim, and dragged him to the side of the road and drove away. Two cartridges remained in the victim's right hand. Defendant later gave the victim's gun to his cocaine supplier in return for twenty dollars' worth of cocaine. Defendant was convicted of murder in the second degree.

## JURY INSTRUCTIONS

■ Defendant claims that his right to a fair trial was unconstitutionally compromised by two of the instructions given to the jury. To the extent our review of the court's refusal to give certain jury instructions involves questions of law, as in this case invited error and manifest injustice, we review for correctness and accord no deference to the trial court. *Ramon v. Farr*, 770 P.2d 131, 133 (Utah 1989). As to our analysis of the instructions themselves, we affirm when the instructions, taken as a whole, "fairly tender the case to the jury [even where] one or more of the instructions, standing alone, are not as full or accurate as they might have been." *State*

*v. Haston*, 811 P.2d 929, 931 (Utah App. 1991) (quoting *State v. Brooks*, 638 P.2d 537, 542 (Utah 1981)).

■ The usual rule is that "[n]o party may assign as error any portion of the charge or omission therefrom unless he objects thereto before the jury is instructed, stating distinctly the matter to which he objects and the grounds of his objection." Utah R.Crim.P. 19(c); *State v. Medina*, 738 P.2d 1021, 1023 (Utah 1987). The Utah Supreme Court has emphasized that Rule 19(c) requires more than a general exception to the instructions. The rule "requires that the matter excepted to and the ground therefor be distinctly stated." *State v. Cantu*, 750 P.2d 591, 594 (Utah 1988). Where no grounds are apparent from the text of the instruction and no objection is stated, the objection is presumed waived. *State v. Dumas*, 721 P.2d 502, 506 (Utah 1986). The exception to this general rule is that "[n]otwithstanding a party's failure to object, error may be assigned to instructions in order to avoid manifest injustice." Utah R.Crim.P. 19(c).

Prior to trial, both the prosecutor and defense counsel submitted proposed jury instructions to the trial court. Among defendant's proposed jury instructions were two instructions on reasonable doubt and two on self-defense.[1] The court used one

---

1. Defendant requested the following reasonable doubt instruction, which the trial court adopted:

All presumptions of law, independent of evidence, are in favor of innocence, and a defendant is presumed innocent until he is proven guilty beyond a reasonable doubt. And in case of a reasonable doubt as to whether his guilt is satisfactorily shown, he is entitled to an acquittal.

I have heretofore told you that the burden is upon the State to prove the defendant guilty beyond a reasonable doubt. Proof beyond a reasonable doubt is meant a doubt that is based on reason and one which is reasonable in view of all the evidence. It must be a reasonable doubt and not a doubt which is merely fanciful or imaginary or based on a wholly speculative possibility. Proof beyond a reasonable doubt is that degree of proof which satisfies the mind, convinces the understanding of those who are bound to act conscientiously upon it and obviates all reasonable doubt. A reasonable doubt is a doubt which reasonable men and women would en-

tertain and it must arise from the evidence or the lack of evidence in this case.

Defendant requested the following reasonable doubt instruction, which the trial court rejected.

All presumptions of law, independent of evidence, are in favor of innocence, and a defendant is presumed innocent until he is proved guilty beyond a reasonable doubt. And in case of a reasonable doubt as to whether a defendant's guilt is satisfactorily shown, he or she is entitled to an acquittal.

I have heretofore told you that the burden is upon the State to prove the defendant guilty beyond a reasonable doubt. Now by reasonable doubt is meant a doubt that is based on reason and one which is reasonable in view of all the evidence. A reasonable doubt is a doubt which reasonable men and women would entertain, and it must arise from the evidence or the lack of evidence in this case. If, after an impartial consideration and comparison of all the evidence in the case, you can candidly say that you have the kind of doubt which would cause a person to hesitate to act, you have a reasonable doubt.

each of defense counsel's reasonable doubt and self-defense instructions and rejected the alternate instructions. Defense counsel objected to the court's rejection of one of the reasonable doubt instructions he submitted, claiming that the instruction not given was better because it "has more of a clarification ... and also contains some cites of authority that we think supports our position." Defense also objects, for the first time on appeal, to the instruction given on self-defense.

Thus, defense counsel submitted not only the two objectionable instructions, but also the two instructions accepted by the court. Defendant then objected to one of his own instructions on reasonable doubt and declined to object to the other.[2] Defense's position is problematic because, by submitting all four proposed instructions to the court, counsel impliedly not only represented that the instructions were legally sound, but urged the trial court to use the same instructions it now appeals. Defense counsel now argues manifest injustice against his invited error.

*Medina* is on point as to both instructions. In *Medina,* the Utah Supreme Court declined to entertain a claim of manifest injustice where defense counsel "actively represented to the court that she had read the instruction and had no objection to it." 738 P.2d at 1023. The court reasoned that an objection raised for the first time on appeal was inappropriate because "counsel consciously chose not to assert any objection that might have been raised and affirmatively led the trial court to believe that there was nothing wrong with the instruction." *Id.*

In *Medina,* defense counsel stated she had no objections to an instruction that she had not submitted, whereas in the present case, the defense had submitted the "objectionable" instructions. We think it reasonable to assume that the act of submitting an instruction to a court of law, whether or not signed by counsel,[3] and

---

Deciding that someone has committed a crime beyond a reasonable doubt is different from making decisions concerning the more weighty affairs of life. In such affairs of life, a person looks forward and, based on a degree of hope, determination and personal resolve, makes a decision that involves a degree of risk. However, this decision is revocable or at least salvageable.

A decision to convict or not looks backward. It is always irrevocable as to your decision. It demands reason, impartiality and common sense. You must have a greater assurance of correctness of this decision than you normally have in making the weighty decisions in your life.

Defendant requested the following self-defense instruction, which the trial court adopted.

You are instructed that laws of Utah do not require a defendant to establish self-defense by a preponderance or greater weight of the evidence, but merely to bring forward some evidence which tends to show self-defense. If the defendant has done this in any fashion, and if such evidence is believed by you to raise a reasonable doubt as to the unlawfulness of the act of shooting at Mr. Jerry Hermansen, you should find the defendant not guilty.

Defendant requested the following self-defense instruction, which the trial court rejected.

You are instructed that laws of Utah do not require a defendant to establish self-defense by a preponderance or greater weight of the evidence. The laws of Utah require the defendant to bring forward some evidence which

tends to show self-defense. If the defendant has done this, and if such evidence of self-defense when considered in connection with all other evidence in this case raises a reasonable doubt as to the defendant's guilt or if it raises a reason to believe that the defendant acted in self-defense you must find him not guilty. The defendant has no particular burden of proof but is entitled to an acquittal if there is any basis in the evidence from either side sufficient to create a reasonable doubt.

2. The record suggests that counsel met with the judge in chambers to discuss jury instructions and exceptions. This in-chambers conference was not on the record. After this conference, a bench conference was held to put the exceptions on the record.

Defense counsel stated "It's my understanding we had made two exceptions [in chambers] to jury instructions. And I can only see one here. ... There should be one more exception, but I can't recall at this point what it was." The court recalled that counsel had suggested several exceptions, "but we modified some of the exceptions." This exchange demonstrates the importance of putting in-chambers conferences contemporaneously on the record. *See e.g., State v. Suarez,* 793 P.2d 934, 936 & n. 3 (Utah App. 1990); *Birch v. Birch,* 771 P.2d 1114, 1116–17 (Utah App.1989).

3. While attorneys are not required to sign proposed jury instructions, Utah R.Civ.P. 11 requires that pleadings and papers submitted to a

whether or not counsel later objects to it, constitutes a representation by the attorney that he or she has read the instruction, waives any objection thereto, and endorses it as legally sound. Also, when counsel submits more than one instruction on a single issue, counsel cannot complain when, as expected, the court uses only one of them. We think this principle holds whether or not counsel subsequently voices an objection after the judge selects the "wrong" instruction.

■ We agree with those jurisdictions which have adopted the rule that a party may not appeal a jury instruction that the same party submitted or requested. *E.g., State v. Henderson*, 114 Wash.2d 867, 792 P.2d 514 (1990); *State v. Tassler*, 159 Ariz. 183, 765 P.2d 1007, 1009 (1988) (one may not deliberately inject error in the record and then profit from it on appeal); *Brooks v. State*, 706 P.2d 664, 668 (Wyo.1985); *State v. Kincaid*, 103 Wash.2d 304, 692 P.2d 823, 830 (1985); *State v. Aragon*, 107 Idaho 358, 690 P.2d 293, 297 (1984); *State v. Stroud*, 210 Mont. 58, 683 P.2d 459, 467–68 (1984); *State v. Patchett*, 229 Kan. 163, 621 P.2d 1011, 1014 (1981); *West v. State*, 617 P.2d 1362, 1366 (Okl.Cr.App. 1980); *State v. Cruz*, 86 N.M. 455, 525 P.2d 382, 384 (App.1974); *Adams v. State*, 81 Nev. 524, 407 P.2d 169, 173 (1965); *State v. North*, 238 Or. 90, 390 P.2d 637, 639, *cert. denied*, 379 U.S. 939, 85 S.Ct. 344, 13 L.Ed.2d 349 (1964).[4]

We conclude that where an instruction is submitted by a party, that same party can-

not later object to it because he or she has already waived any objection and endorsed it as legally sound. Further, when a party submits more than one instruction on a single issue, it is reasonable to assume that one instruction represents that party's preferred position, while the others represent back up positions. Therefore, that party cannot complain when the court uses but one of the requested instructions.

## INVITED ERROR AND MANIFEST INJUSTICE

■ Closely related to the rule just elaborated above, is the doctrine of invited error. This doctrine would also require the conclusion that a party cannot appeal a jury instruction that the same party requested. The doctrine of invited error "prohibits a party from setting up an error at trial and then complaining of it on appeal." *Henderson*, 114 Wash.2d 867, 792 P.2d 514, 516 (1990) (quoting *State v. Pam*, 101 Wash.2d 507, 680 P.2d 762, 764 (1984)). In *Henderson*, defendant also claimed that his due process rights were violated. Nevertheless, the *Henderson* court held that "[e]ven where constitutional issues are involved, invited error precludes judicial review." *Id.* (quoting *State v. Tyson*, 33 Wash.App. 859, 658 P.2d 55, 58, *review denied*, 99 Wash.2d 1023 (1983)). The court reasoned that "[t]o hold otherwise would put a premium on defendants misleading trial courts...." *Henderson*, 792 P.2d at 515.

court be signed by the attorney and that the signature

    constitutes a certificate by him that he has read the pleading, motion, or other paper; that to the best of his knowledge, information, and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification, or reversal of existing law, and that it is not interposed for any improper purpose....

In the broad sense, there is nothing talismanic about the act of signing. The act of submitting information to the court should, as a matter of professionalism, reflect the same kind of analysis and certification contemplated in Rule 11.

**4.** Other jurisdictions have adopted a modified form of the rule: *State v. Carson*, 1 Haw.App.

214, 617 P.2d 573, 574–75 (1980) (plain error in instruction affecting substantial rights will be considered for first time on appeal, even where instruction was requested by defense); *State v. Dozier*, 163 W.Va. 192, 195, 255 S.E.2d 552, 554 (1979) (where instruction unconstitutionally shifted burden of proof, invited error will not operate to deprive an accused of his constitutional right to due process); *People v. Bender*, 20 Ill.2d 45, 54, 169 N.E.2d 328, 333 (1960) (court must review no matter which side proposed the instruction where due process rights have been violated). *See also Henderson*, 792 P.2d at 516–20 (Utter, J., dissenting) (where constitutional error is involved and where defendant did not intentionally mislead the court in requesting the flawed instruction, court should review constitutional error, even if not objected to at trial).

Similarly, the supreme court of this state held that a last-minute instruction request made after the case was finished and ready to go to the jury "should be canvassed in an atmosphere of invited error ... where ample opportunity had been afforded to avoid such a conclusion [of invited error]." *State v. Gleason*, 17 Utah 2d 150, 405 P.2d 793, 795 (1965). While *Gleason* is not precisely on point, it does adopt the doctrine of invited error as far as the timing of jury instructions. We think the present case is a more extreme example of invited error. Whereas *Gleason* involved a jury instruction that was requested at the last minute, this case involves a jury instruction that counsel had ample time to consider because counsel had submitted it.

Defendant claims that despite his failure to object, this court should review the jury instructions pursuant to Utah R.Crim.P. 19(c), which states "[n]otwithstanding a party's failure to object, error may be assigned to instructions in order to avoid manifest injustice."

In the past, this court and the supreme court have used the manifest injustice doctrine either where the instruction misstated the law or where the judge, with no forewarning to counsel, gave a verdict-urging instruction. The court in *State v. Lesley*, 672 P.2d 79, 81 (Utah 1983) held that it was required to consider an unobjected-to jury instruction where the instruction "misstate[d] the law of criminal trespass and [was] entirely inconsistent with the statutory definition of that offense." This court considered an unobjected-to instruction where, without first forewarning counsel, the trial judge gave a verdict-urging instruction after the jury had deliberated for

five hours. *State v. Lactod*, 761 P.2d 23, 28–32 (Utah App.1988).

■ In contrast, the supreme court refused to consider the manifest injustice exception where defense counsel, rather than merely remain silent, actively represented to the court that she had read the instruction and had no objection, leading the trial court to believe that nothing was wrong with the instruction. *State v. Medina*, 738 P.2d 1021, 1023 (Utah 1987). Here, we do not reach an evaluation of the correctness of the submitted instruction because if there was error, it was invited by defendant, and where invited error butts up against manifest injustice, the invited error rule prevails.

As we earlier discussed, this case is even more compelling than *Medina* because rather than merely endorsing an instruction already before the court, counsel in this case actually submitted the instruction. Moreover, it is not our function to determine whether the instruction not given might also have been proper or even preferable. *State v. Pedersen*, 802 P.2d 1328, 1331–32 (Utah App.1990).[5]

## SUFFICIENCY OF EVIDENCE

Defendant argues that the evidence was insufficient to sustain a verdict of second degree murder. Defendant supports this claim by citing two cases where the Utah Supreme Court sustained a conviction of manslaughter despite the fact that the defendants in each case acted in nondefensive or even in intentional manners.

■ In reviewing the sufficiency of the evidence, we do not compare fact situations in different appellate cases with the facts of the case before us.[6] To determine

---

5. This court has already upheld a reasonable doubt instruction identical to the instruction challenged here. *State v. Haston*, 811 P.2d 929, 932–34 (Utah App.1991) (the instruction "is not a model of lucidity and simplicity," yet it does accurately present the State's burden of proof). *See also Pedersen*, 802 P.2d at 1331–32.

6. The two cases cited by defendant are of little use in light of our standard of review. In *State ex rel. Gonzales*, 545 P.2d 187 (Utah 1975), the court found that the record supported the court's finding that the defendant acted from

anger rather than in defense of himself or his father and that he was therefore guilty of manslaughter. *Id.* at 189. The issue of second degree murder versus manslaughter was not before the *Gonzales* court. Neither was that issue before the court in *State v. Knoll*, 712 P.2d 211 (Utah 1985). In *Knoll*, the defendant was charged with both manslaughter and second degree murder and was convicted of the lesser offense of manslaughter. Defendant appealed from that conviction. In short, neither case sheds light on whether the evidence was suffi-

whether the evidence was sufficient to support the jury's verdict, we view the evidence and the reasonable inferences drawn therefrom in the light most favorable to the verdict. *State v. Pedersen*, 802 P.2d 1328, 1330 (Utah App.1990) (citing *State v. Johnson*, 774 P.2d 1141, 1147 (Utah 1989)). We reverse only when the evidence, so viewed, "is sufficiently inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt that the defendant committed the crime of which he was convicted." *Pedersen*, 802 P.2d at 1330.

 In challenging the sufficiency of the evidence, the burden on defendant is heavy. He must marshal all evidence *supporting* the jury's verdict and must then show how this marshaled evidence is insufficient to support the verdict even when viewed in the light most favorable to the verdict. *State v. Moore*, 802 P.2d 732, 738–39 (Utah App.1990). However, because we adopted the *Moore* standard after defendant had already prepared and submitted his brief, we dispose of the sufficiency of the evidence issue on its merits. We reiterate that in subsequent cases dealing with sufficiency of the evidence, we will require defendants to marshal the evidence in support of the verdict. *Id.*

The evidence supporting the jury's verdict forms the basis for our recitation of the facts early in this opinion. No purpose would be served in repeating it here other than to note that the facts readily support a conviction of second degree murder, which occurs where one "intentionally or knowingly causes the death of another" or where one, with intent "to cause serious bodily injury to another ... commits an act clearly dangerous to human life that causes the death of another" or where one, with a "depraved indifference to human life ... engages in conduct which creates a grave risk of death to another," causing the death of another. Utah Code Ann. § 76-5-203 (Supp.1989). Our review of the evidence, viewed in the light most favorable to the verdict, persuades us that the evidence was sufficient to support the ver-

cient to convict defendant of second degree

dict. As a reviewing court, we are not in a position to consider whether it would have been more appropriate to convict on the lesser charge.

Affirmed.

ORME, J., concurs.

JACKSON, J., concurs in the result only.